IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**BLACKHAWK MINING, LLC,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-365**        (JCN: 2024009123)

**GLENN STOVER,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Blackhawk Mining, LLC ("Blackhawk") appeals the August 11, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Glenn Stover timely filed a response.[1] Blackhawk did not reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which granted Mr. Stover a 4% permanent partial disability ("PPD") award, and instead granting an additional 8% PPD for a total award of 12% PPD.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Stover, a maintenance manager at Blackhawk, completed an Employees' and Physicians' Report of Occupational Injury form dated November 1, 2023. Mr. Stover reported that he sustained an injury to the ulnar nerve of both wrists from years of using impact wrenches, hammer drills, and hydraulic drills. The physicians' section of the form was completed by Michael Kominsky, D.C., who indicated that Mr. Stover sustained a compression of the ulnar nerve of the bilateral wrists as a direct result of an occupational disease. Dr. Kominsky described the injury as resulting from years of using high-impact drills and wrenches.

On November 1, 2023, Mr. Stover was seen by Michael Kominsky, D.C. Mr. Stover presented with numbness and tingling throughout his hands and fingers, loss of sensation bilaterally, and pain that increased at night. Dr. Kominsky noted that over the last four to

---

[1] Blackhawk is represented by Billy R. Shelton, Esq. Mr. Stover is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

1

five years, Mr. Stover started to lose grip strength primarily in the right hand. Dr. Kominsky assessed occupational-related bilateral median nerve neuropathy at the wrist, bilateral carpal tunnel syndrome, bilateral ulnar neuropathy at the wrist, and bilateral Guyon tunnel syndrome. Dr. Kominsky opined that Mr. Stover's occupational environment is directly related to his diagnoses of bilateral carpal tunnel syndrome and bilateral Guyon tunnel syndrome. Further, Dr. Kominsky noted that Mr. Stover used numerous tools, including high-impact hammer drills, hydraulic drills, hammers, impact wrenches, hammer ratchets, and numerous other wrenches, which he opined caused damage to the median and ulnar nerve of the wrist.

By order dated November 27, 2023, the claim administrator held the claim compensable for bilateral carpal tunnel syndrome. Mr. Stover was seen by Megan Dincher, PA-C, at West Virginia Orthopedic Trauma, on January 25, 2024, for an initial orthopedic evaluation of his bilateral hand numbness and tingling. PA-C Dincher assessed right carpal tunnel syndrome. Mr. Stover followed up with PA-C Dincher on March 3, 2024, and she assessed status post carpal tunnel release.

Prasadarao Mukkamala, M.D., examined Mr. Stover and issued a report dated June 27, 2024. Mr. Stover reported some numbness in both hands, which he indicated was not bad, and not interfering with his activities. Dr. Mukkamala noted that Mr. Stover had a history of borderline diabetes and hypertension. Further, Dr. Mukkamala noted that Mr. Stover was somewhat limited in relation to household activities due to a prior shoulder injury. Mr. Stover reported that he was working with no restrictions at the time of the examination. Dr. Mukkamala diagnosed bilateral carpal tunnel syndrome, status post-surgical release of right carpal tunnel syndrome, and opined that Mr. Stover had reached maximum medical improvement ("MMI").

Dr. Mukkamala assessed Mr. Stover's impairment using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("the *Guides*"). Dr. Mukkamala noted that Mr. Stover underwent surgical release of right carpal tunnel syndrome, which helped him significantly, but that he continued to have some mild numbness. Using Table 11 on page 48 of the *Guides*, Dr. Mukkamala estimated that Mr. Stover's sensory symptoms constituted 10% impairment. Dr. Mukkamala opined that according to Table 15 on page 54 of the *Guides*, total loss of sensation in the median nerve distribution would account for 38% upper extremity impairment. Because Dr. Mukkamala estimated the sensory symptoms at 10%, he concluded that 10% of 38% would be 3.8% upper extremity impairment, which he converted to 2% whole person impairment ("WPI"). Dr. Mukkamala combined 2% WPI for the right upper extremity and 2% WPI for the left upper extremity for a combined total of 4% WPI. Dr. Mukkamala noted that if Mr. Stover underwent surgical release of the left carpal tunnel syndrome in the future, then he may have to be reevaluated. By order dated July 2, 2024, the claim administrator granted Mr. Stover a 4% PPD award based on Dr. Mukkamala's report. Mr. Stover protested this order to the Board.

On October 7, 2024, Mr. Stover was evaluated by Bruce Guberman, M.D., who reported that on May 21, 2020, Mr. Stover was lifting a piece of metal weighing approximately forty to fifty pounds, when he experienced pain in his right shoulder and arm. Dr. Guberman's impression was rotator cuff tear of the right shoulder due to the injury occurring at work, status post-surgery, and bilateral carpal tunnel syndrome. Dr. Guberman assessed Mr. Stover's carpal tunnel syndrome impairment using Tables 11, 12, and 15 of the *Guides*, and opined that Mr. Stover had a 7% WPI due to sensory and motor deficits of the right upper extremity, and a 7% WPI due to sensory and motor deficit of the left upper extremity. Pursuant to West Virginia Code of State Rules § 85-20 (2006) ("Rule 20"), Dr. Guberman reduced the WPI ratings to 6% for each wrist. Dr. Guberman opined that Mr. Stover had a total combined WPI of 12% due to the compensable injury.

On March 4, 2025, Dr. Mukkamala conducted a second evaluation of Mr. Stover using the *Guides*. Mr. Stover reported pain and limitation of motion at the right shoulder, residual numbness in the right hand after surgical release of carpal tunnel syndrome, and numbness in the left hand. For carpal tunnel syndrome, using Table 11 on page 48 of the *Guides*, Dr. Mukkamala placed Mr. Stover in grade 3 and calculated 30% diminution of sensation. Using Table 12 on page 49 of the *Guides*, Dr. Mukkamala determined that there was no motor deficit. Dr. Mukkamala determined that according to Table 15 on page 54 of the *Guides*, total loss of sensation in the median nerve distribution would account for 38% upper extremity impairment.

Because Dr. Mukkamala estimated the sensory deficit at 30% diminution of sensation, he found that 30% of the 38% would be 11.4% upper extremity impairment, which he rounded to 11% upper extremity impairment, and converted to 7% whole person impairment. Dr. Mukkamala stated that according to Rule 20, the maximum that is allowed for the most severe disability for carpal tunnel syndrome would be 6% WPI. Dr. Mukkamala opined that Mr. Stover had mild residual symptoms and stated that to calculate 6% impairment for each wrist would be erroneous. Dr. Mukkamala concluded that 2% impairment accurately reflects the proper impairment calculations, for a combined total of 4% WPI in relation to the carpal tunnel syndrome. Dr. Mukkamala did not agree with Dr. Guberman's findings, and he indicated that Dr. Guberman failed to account for the nonoccupational risk factors of increased body mass index and diabetes.

By order dated August 11, 2025, the Board reversed the claim administrator's order and granted Mr. Stover an additional 8% PPD award for a total award of 12% PPD. It is from this order that Blackhawk now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further

3

proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Blackhawk argues that the Board was clearly wrong in finding that Mr. Stover should be granted a 12% PPD award for occupationally acquired bilateral carpal tunnel syndrome. Further, Blackhawk asserts that the Board failed to consider Dr. Mukkamala's uncontradicted opinion that Mr. Stover's obesity and diabetes were non-occupational risk factors for the development of carpal tunnel syndrome, which would require apportionment. We disagree.

In Syllabus Point 6 of *Duff v. Kanawha County Commission*, 250 W. Va. 510, 905 S.E.2d 528 (2024), the Supreme Court of Appeals of West Virginia held that:

Under West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

West Virginia Code of State Rules § 85-20-64.5 (2006), provides that "an injured worker who can otherwise show entitlement to a permanent partial disability award for carpal tunnel syndrome shall be eligible to receive a permanent partial disability award of 0%-6% in each affected hand."

Here, the Board found that Dr. Mukkamala's first report was unreliable because he found 2% WPI for right carpal tunnel syndrome and 2% WPI for left carpal tunnel syndrome, but in his second report he found 7% WPI for right carpal tunnel syndrome and 7% WPI for left carpal tunnel syndrome, which Dr. Guberman also found. With regard to

4

Dr. Mukkamala's second report, the Board found that Dr. Mukkamala incorrectly applied Rule 20 when he found that 6% impairment would be allowed only in the most severe CTS cases and adjusted his rating to 4% per extremity.[2] Thus, the Board found that Dr. Mukkamala's second report was unreliable. In contrast, the Board found that Dr. Guberman's report was reliable, as he properly applied Rule 20 when rating the compensable condition. The Board did not err in finding that Dr. Guberman's evaluation provides the most reliable opinion regarding Mr. Stover's impairment from the compensable injury.

Although Blackhawk argues that the Board erred in failing to consider Dr. Mukkamala's opinion that obesity and diabetes were non-occupational risk factors that would require apportionment, Dr. Mukkamala gave no explanation regarding apportionment. Further, Dr. Guberman noted both factors in his report, and concluded that apportionment was not necessary in this claim. The Board concluded that Dr. Guberman's report is the most reliable of record.

Upon review, we conclude that the Board was not clearly wrong in finding that the preponderance of the medical evidence establishes that Mr. Stover is entitled to a 12% PPD award based on Dr. Guberman's report. The Board did not err in its determination that Dr. Mukkamala's reports were unreliable. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order and granting an additional 8% PPD award for a total award of 12% PPD.

Accordingly, we affirm the Board's August 11, 2025, order.

Affirmed.

**ISSUED:** April 7, 2026

---

[2] In *Dingess v. Off. of Ins. Comm'r*, No. 35662, 2012 WL 6050571, at *1 n.1 (W. Va. Dec. 5, 2012) (memorandum decision), the Supreme Court of Appeals of West Virginia disagreed with Dr. Mukkamala's identical application of Rule 20, and stated "The Office of Judges correctly interpreted § 85-20-64.5 to establish the range of awards for impairment due to carpal tunnel syndrome as 0%-6% for each affected hand. Any impairment ratings in excess of 6% will have their awards reduced to 6% under § 85-20-64.5."

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White